**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

UNITED STATES OF AMERICA

v.                                                    CRIMINAL ACTION NO. 5:23-cr-00093

MATTHEW HARRIS ENGLAND

<u>**ORDER**</u>

On May 13, 2024, the parties came before the undersigned for a hearing concerning the ***Defendant's <u>Bruen</u>-Based Motion to Dismiss*** (ECF No. 52), the ***Response of United States in Opposition to Defendant's <u>Bruen</u>-Based Motion to Dismiss*** (ECF No. 56), the ***Defendant's <u>Bruen</u> Motion Reply & Supplemental Authorities*** (ECF No. 57), as well as the ***Defendant's Supplemental <u>Bruen</u> Reply*** (ECF No. 58). For the reasons stated herein, the Court finds that the Defendant's motion should be **DENIED**.

**Background**

The Defendant was charged with possession of a firearm that was not registered to the Defendant, a convicted felon, in the National Firearms Registration and Transfer Record, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), and 26 U.S.C. §§ 5841, 5861(d), and 5871 in an indictment returned on June 1, 2023 (ECF No. 1). The two-count indictment charges that, on or about April 3, 2023, at or near Meadow Bridge, Summers County, West Virginia, the Defendant knowingly received and possessed a firearm, a Savage, model Stevens 94F, 20-gauge shotgun, having a modified barrel length of less than 18 inches and an overall length of less than 26 inches. The indictment further alleges that at the time the Defendant possessed the firearm, he knew that

1

he had been previously convicted of a crime punishable by imprisonment for a term exceeding one year, as defined in 18 U.S.C. § 921(a)(20), that is, convicted on or about May 9, 2014 in the United States District Court for the Southern District of West Virginia, criminal case number 2:14-cr-00030-01, of aiding and abetting the possession of stolen firearms, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2).

Neither party disputes the fact that the Defendant possessed a firearm, or that he was convicted felon. However, the Defendant asks this Court to dismiss the indictment returned against him on the basis of the opinion set forth in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1, 142 S.Ct. 2111, 213 L.Ed.2d 387 (2022) concerning Second Amendment challenges to gun regulations.

As an initial matter, the undersigned observes that this District has previously determined numerous times that 18 U.S.C. § 922(g)(1) is constitutional.[1] Therefore, the undersigned will not belabor that segment of the Defendant's arguments, but instead focuses on the issue concerning the constitutionality of 26 U.S.C. §§ 5841, 5861(d), 5871, which appears to be a matter of first impression in this District.

### Legal Standard

Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure establishes that a court may dismiss a defective indictment for failure to state an offense where the indictment alleges the defendant violated an unconstitutional statute. *U.S. v. Price*, No. 2:22-cr-00097, 635 F.Supp.3d

---

[1] See, e.g., *United States v. Price*, No. 2:22-cr-00097, 2022 WL 6968457, at *8 (S.D.W. Va. Oct. 12, 2022)(Goodwin, J.); *United States v. Bradley*, No. 2:22-cr-00098, 2023 WL 2621352, at *2 (S.D.W. Va. Mar. 23, 2023)(Berger, J.); *United States v. Bever*, No. 2:22-cr-00164, 669 F.Supp.3d 578 (S.D.W. Va. Apr. 18, 2023)(Faber, J.); *United States v. Manns*, No. 5:22-cr-00066, 2023 WL 312130, at *3 (S.D.W. Va. Apr. 27, 2023)(Volk, J.); *United States v. Nellum-Toney*, No. 2:23-cr-00034, 2023 WL 6449443, at *5 (S.D.W. Va. Oct. 3, 2023)(Faber, J.); *United States v. Bolling*, No. 2:21-cr-00087, 2023 WL 4874482, at *5 (S.D.W. Va. Jul. 31, 2023)(Faber, J.).

455, 457–458 (S.D.W. Va. Oct. 12, 2022)(citing U.S. v. Engle, 676 F.3d 405, 415 (4ᵗʰ Cir. 2012)(Goodwin, J.); U.S. v. Brown, 715 F. Supp. 2d 688, 689 (E.D. Va. 2010) (citing In re Civil Rights Cases, 109 U.S. 3, 8–9, 3 S.Ct. 18, 27 L.Ed. 835 (1883)); U.S. v. Vandevere, 2019 WL 4439483, at *1 n.1 (W.D.N.C. Sep. 16, 2019). "To warrant dismissal of the indictment, [the defendant] would need to demonstrate that the allegations therein, even if true, would not state an offense." U.S. v. Thomas, 367 F.3d 194, 197 (4ᵗʰ Cir. 2004)(citing U.S. v. Hooker, 841 F.2d 1225, 1227–28 (4ᵗʰ Cir. 1988)(*en banc*)).

### Arguments

The Defendant contends that pursuant to Bruen, which instructs courts to consider only the Second Amendment's plain text and history, that if the Second Amendment covers an individual's conduct, then the Constitution presumptively protects that conduct. (ECF No. 52 at 1) Further, the Defendant asserts that because possession of a firearm falls within the Second Amendment's plain text, thus, his conduct is presumptively protected, and it is the government's burden to rebut that presumption. (Id.) The Defendant argues that in this case, not only there is no well-established and representative historical tradition of permanently disarming convicted felons, but also no separate prohibition of possessing short-barrel firearms or conditioning Second Amendment protections for such arms on the payment of transfer taxes. (Id.)

The Defendant explains that the firearm seized from his residence is a 1966 Savage Arms, Stevens Model 94F, 20-gauge shotgun, which had portions of both the barrel and stock removed: the Defendant himself did not alter this firearm in any way, and does not dispute that it is a weapon made from a shotgun, as defined under the National Firearms Act ("NFA"), but attributes it as a "family gun" that belonged to his deceased father. (Id. at 6) As to the charges against him in this

indictment, the Defendant notes that all NFA firearms are required to be registered with the National Firearm Registration and Transfer Record ("NFRTR"), with the underlying purpose of the NFA to curtail, if not prohibit, transactions in NFA firearms – in short, those NFA provisions relevant to the Defendant make it unlawful to possess a firearm not registered to him in the NFRTR. (Id. at 7)

The Defendant points out that prior to Bruen, courts employed a "means-end scrutiny" to assess the government's interest in firearm restrictions against a challenger's interest in exercising the right to keep and bear arms – however, Bruen has dispensed with means-end scrutiny, and all modern federal firearm regulations are now subject to reexamination under the Second Amendment, using Bruen's plain text and history standard. (Id. at 23-24) This pertains to all the charging statutes against the Defendant; Bruen provides that the Second Amendment's plain text covers an individual's conduct, irrespective of who that individual is, "or what bearable arm they possess – the Constitution presumptively protects that conduct." (Id. at 25) Bruen holds that the government must demonstrate that the firearm regulation is consistent with this Nation's historical tradition of firearm regulation . . . [o]nly if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' " (Id., quoting Bruen, at 17, 2126)

The Defendant contends that the Second Amendment "does not distinguish between law abiding and non-law-abiding citizens, convicted felons and non-convicted felons, or citizens favored or disfavored by a given Congress." (Id. at 25-26) The Second Amendment plainly states that "the right of the people to keep and bear arms shall not be infringed" which a growing number of courts have found since Bruen is limited to the protected "conduct" of possessing and carrying

bearable arms, and that "the people" include individuals like the Defendant. (Id. at 26-28) Consequently, the Defendant enjoys Second Amendment protections the same as any other citizen. (Id. at 28)

Regarding the subject firearm, the Defendant's modified Stevens Model 94F shotgun, the Supreme Court of the United States had determined prior to Bruen that a textual analysis of the Second Amendment's operative clause makes clear that "arms" means "all firearms", not just those Congress believes should be regulated. See District of Columbia v. Heller, 554 U.S. 570, 581, 128 S.Ct. 2783, 2791, 171 L.Ed.2d 637 (2008). (Id. at 28-29) The Defendant notes that Heller's textual analysis of the Second Amendment underscores that there is no mention of "common use." (Id. at 29) Following the Bruen decision, the Government is required to rebut the presumption of unconstitutionality: in this case, not only does the Defendant enjoy Second Amendment protections for his conduct possessing his father's modified firearm in his residence for self-defense purposes, but also, this firearm is also no more dangerous and unusual than the Mossberg Shockwave, which is an ATF approved non-NFA firearm in common use today.[2] (Id. at 29-31)

Applying the presumption of unconstitutionality established under Bruen, the Government must show evidence that a well-established, representative tradition of firearm regulation exists that not only supports disarming felons, but also for separately taxing and criminally regulating

---

[2] From field testing, the Defendant contends that the firearm seized from his home is comparable to other firearms that are **non**-NFA, legal firearms, such as a shoulder-fired Remington Model 870 Wingmaster 20-gauge shotgun, and a Mossberg 590 20-gauge Shockwave (See ECF No. 52 at 15-22). The Defendant's expert has determined from his testing that the Defendant's modified Stevens Model 94F 20-gauge shotgun is not functionally different from the 20-gauge Mossberg Shockwave, which is sold legally in the United States without NFA registration since 2017 (Id. at 17). Because the Defendant's firearm is "no more dangerous, lethal, or easily concealed" than the Mossberg weapon, under the auspices of Bruen, it is unconstitutional that the Defendant is facing a felony conviction and up to a ten-year prison sentence for possessing a weapon that has absolutely no functional significance from another weapon currently sold in the United States without NFA registration. (Id.)

short barrel shotguns. (<u>Id</u>. at 31) The Defendant asserts there is none, and asks this Court to follow the framework established by <u>Bruen</u> which supports a finding that Section 922(g)(1) and Sections 5841, 5861(d), and 5871 are unconstitutional, and dismiss the indictment against him. (<u>Id</u>.)

In response, the United States asserts that <u>Bruen</u> did not abrogate the longstanding prohibition on the possession of short-barreled shotguns recognized by <u>United States v. Miller</u>, 307 U.S. at 178. (ECF No. 56 at 10-11). The United States argues that the Defendant's claims that his firearm, which has a shortened stock, shortened barrel and "appears to be held together with electrical tape and deck screws, is no less dangerous or unusual than a shotgun that has not been so modified, or the Mossberg Shockwave and other similar firearms that have similar features as a shotgun but are designed to be handheld rather than fire from the shoulder, are essentially meaningless against <u>Miller's</u> backdrop." (<u>Id</u>. at 11) The United States points out that Fourth Circuit jurisprudence since 1992 has consistently found that NFA regulations surrounding such firearms proper, as they found such to be dangerous and unusual, and typically used by persons engaged in unlawful activities. (<u>Id</u>. at 11-12) Moreover, the United States contends that even the Defendant's expert's report failed to acknowledge the potential uses for the Mossberg Shockwave do not include use as a concealed carry weapon or inflicting deadly violence to others, which are reasons why the NFA weapons are subject to additional regulations. (<u>Id</u>. at 12) The United States further highlights that the difference between the Defendant's firearm and the Mossberg Shockwave is three-to-four inches, which underscores the concealability for such a firearm – further, even considering the Defendant's purported statistics as to registration with the NFA for shotguns having a barrel or barrels less than eighteen inches in length, the numbers for same are significantly lower than other types of NFA weapons, indicating short-barreled shotguns are not particularly

common in the United States. (Id. at 12-13) Also, in light of the Bruen framework, which mandates courts to examine whether modern or historical regulations impose a comparable burden on the right of armed self-defense, and whether that burden is comparably justified, the United States notes that the Miller Court identified several Founding-era laws providing that weapons for use in military service required firearms to be no less than a certain length, which are analogous to the restrictions imposed by the NFA. (Id. at 13-14) In short, the NFA does not endorse a blanket prohibition of firearms, even short-barreled ones, it merely requires registration of certain weapons with characteristics that make them particularly dangerous – it does not require a person to show a special need for such firearms, which is the discretionary statute that came under fire in Bruen. (Id. at 14) At bottom, the Defendant, a convicted felon, simply cannot possess a short-barreled shotgun even it had been properly registered to him. (Id. at 15) The United States asks the Court to deny the Defendant's motion because his conduct falls outside the Second Amendment's protections. (Id.)

In further support of his motion to dismiss, the Defendant submitted two reply briefs: first, he notes that the United States' arguments that the Second Amendment's protections do not extend to him just because he is a not a law-abiding citizen, and that the weapon seized from his residence is dangerous and unusual, have been rejected by an increasing number of courts nationwide. (ECF No. 57 at 1-2) The Defendant disputes the United States' assertion that Miller found short-barreled shotguns dangerous, and Heller did not recognize any textual or historical regulatory basis for that observation. (Id. at 2). Bruen does not distinguish between a partial or total burden upon Second Amendment conduct – what matters here is that NFA provisions plainly burden protected conduct, and the Defendant's weapon is not any more dangerous and unusual from similar weapons sold

today without the additional burden imposed by the NFA. (Id. at 3) Because the presumption of unconstitutionality under Bruen's step one has been triggered, and the United States has failed to show a historical firearm regulation that justifies these modern restrictions, the presumption under Bruen's step two fails. (Id. at 4-5)

In his supplemental reply brief, the Defendant observes the United States does not rebut the presumption of unconstitutionality under Bruen's step two by showing the Defendant's weapon is somehow dangerous and unusual. (ECF No. 58 at 1) While his weapon is four inches shorter than the Mossberg Shockwave, this makes no functional difference between the weapons in terms of dangerousness, lethality, or concealability. (Id. at 2; see also ECF No. 60-1) The focus here is on the historical tradition or understanding of the Second Amendment, and since the plain text of the Second Amendment does not include the terms "in common use" or "dangerous and unusual", the burden is on the United States to identify historical regulations from colonial times to justify laws regulating such firearms today. (Id. at 3) The United States' argument runs contrary to Bruen's step two historical analysis, and is essentially asserting because the NFA imposes certain restrictions or regulations governing short barrel shotguns, then the regulation is constitutional – in short, "[a] law's existence cannot be the source of it's own constitutional validity."[3] (Id. at 4-5)

**Discussion**

Both parties observe that the Supreme Court rejected the two-part test in favor of greater focus on a historical analysis of acceptable forms of gun regulation. Bruen, 597 U.S. at 17, 142 S.Ct. at 2126. The Court held that "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation

---

[3] Quoting Friedman v. City of Highland Park, Illinois, 784 F.3d 406, 409 (7th Cir. 2015). (Id. at 5)

is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' " Id. Moreover, since pre-Bruen cases relied in part upon the means-ends scrutiny rejected in Bruen, the Defendant encourages the Court to disregard those precedents and embrace a thorough exploration of this Nation's history to challenge the constitutional legitimacy of 18 U.S.C. § 922(g), as well as 26 U.S.C. §§ 5841, 5861(d), and 5871.

Of interest here, the NFA provides that: "It shall be unlawful for any person . . . to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). The NFA further provides that "[a]ny person who violates or fails to comply . . . shall, upon conviction, be fined not more than $10,000, or be imprisoned not more than ten years, or both." 26 U.S.C. § 5871. The NFA states:

> The term "firearm" means . . . (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length . . . [t]he term "firearm" shall not include an antique firearm or any device (other than a machine gun or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon.

26 U.S.C. § 5845(a).

To lawfully possess the firearms identified by the NFA, the Act requires individuals to register their firearms in the NFRTR. 26 U.S.C. § 5841(b). To register, any "manufacturer, importer, [ ] maker" and transferor must file an application with the Secretary of the Treasury that includes: (1) the proper stamp evidencing payment of the $200 tax; (2) identification for the firearm to be registered; and (3) identification of the applicant (if the firearm is being transferred, the application must identify both the transferor and the transferee), including fingerprints and a

photograph. 26 U.S.C. §§ 5811, 5812, 5821, 5822. However, the NFA establishes that the Secretary will deny an application if the making, transfer, receipt, or possession "of the firearm would place the person making the firearm [or the transferee] in violation of the law." 26 U.S.C. §§ 5812, 5822.

There is no dispute that the Defendant's firearm falls within the NFA's definition, and neither party advances the exception that it is an "antique" or a "collector's item" or is "not likely to be used as a weapon" – indeed, the Defendant indicated his modified Stevens Model 94F 20-gauge shotgun is for self-defense purposes in his home. There is also no dispute the Defendant did not register his firearm with the NFRTR.

It is significant that Bruen did not overturn a prior Supreme Court ruling that the protections afforded under Second Amendment did not extend to the right to keep and bear a "shotgun having a barrel of less than eighteen inches in length." United States v. Miller, 307 U.S. 174, 178, 59 S.Ct. 816, 83 L.Ed. 1206 (1939). Bruen did not overturn the reaffirmation of that holding in Heller, either: "We therefore read Miller to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." Heller, 554 U.S. at 625, 128 S.Ct. 2783. It is also relevant here that the Bruen Court noted:

> [A]s Heller and McDonald established and the Court today again explains, the Second Amendment "is neither a regulatory straightjacket nor a regulatory blank check." Ante, at 2133. Properly interpreted, the Second Amendment allows a "variety" of gun regulations. Heller, 554 U. S. at 636, 128 S.Ct. 2783. As Justice Scalia wrote in his opinion for the Court in Heller, and Justice ALITO reiterated in relevant part in the principal opinion in McDonald:
>
>> "Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a

> right to keep and carry any weapon whatsoever in any manner  whatsoever
> and  for  whatever  purpose. . . .[N]othing in our opinion should be taken to
> cast doubt on longstanding prohibitions on the possession of fire-arms by
> felons . . . or laws imposing conditions and qualifications on the commercial
> sale of arms.[]
>
> "We also recognize another important limitation on the right to keep and
> carry arms. <u>Miller</u> said, as we have explained, that the sorts of weapons
> protected were those in common use at the time. We think that limitation is
> fairly supported by the historical tradition of prohibiting the carrying of
> dangerous and unusual weapons." <u>Heller</u>, 554 U.S. at 626−627, and n. 26
> (citations and quotation marks omitted); see also <u>McDonald</u>, 561 U.S. at 786,
> 130 S.Ct. 3020 (plurality opinion).

See <u>Bruen</u> at 597 U.S. at 17, 142 S.Ct. at 2126 (Kavanaugh, J., concurring). While the undersigned

acknowledges the Defendant's argument that short-barreled shotguns existed, in some form or

another (i.e., blunderbuss), at the time the Second Amendment's drafting, and was in "common

use" at the time[4], as it is still is today (i.e., Mossberg Shockwave), this still ignores the notion that

short-barreled shotguns are not necessarily recognized for self-defense purposes in modern times:

many courts have found that *handguns* are recognized as the class of weapons deserving of

protection for self-defense, not necessarily short-barreled shotguns, which enjoy a history of being

noted as the tool for criminal purposes. See, e.g., <u>United States v. Saleem</u>, 659 F.Supp.3d 683,

693-694 (W.D.N.C. Mar. 2, 2023).

To expand on this, other courts have even found that even since <u>Bruen</u>, 26 U.S.C. § 5861(d)

does not offend the Second Amendment: <u>United States v. Brooks</u>, 2023 WL 6880419 (E.D.

Kentucky Oct. 18, 2023)(denying defendant's motion to dismiss indictment charging him with

violation of 18 U.S.C. § 922(g)(1), 26 U.S.C. §§ 5841, 5861(d), and 5871, holding the defendant's

---

[4] <u>Bruen</u>, at U.S. 597 at 21, 142 S.Ct. at 2128 (quoting <u>Heller</u>, 554 U.S. at 627, 128 S.Ct. at 2783 (quoting <u>Miller</u>, 307 U.S. at 179, 59 S.Ct. at 818).

conduct of failing to register a short-barreled shotgun is outside the scope of the Second Amendment because it is an "unusual or dangerous" firearm); United States v. Rush, 2023 WL 403774 (S.D. Ill. Jan. 25, 2023)(Section 5861(d) constitutional because precedent establishes short-barreled shotguns are dangerous and unusual weapons unprotected by the Second Amendment); United States v. Holton, 639 F.Supp.3d 704 (N.D. Tex. Nov. 3, 2022)(holding Section 5861(d) constitutional because the NFA regulates dangerous and unusual weapons but not protected conduct); United States v. Miller, 2023 WL 6300581 (N.D. Tex. Sep. 27, 2023)(denying motion to dismiss charges under 26 U.S.C. §§ 5841, 5861(d), and 5871 as unconstitutional following Bruen); United States v. Jones, 2023 WL 8374409 (S.D. Alabama Dec. 3, 2023)(holding 26 U.S.C. § 5861(d) is not protected activity under Second Amendment, but falls under the NFA, and thus not unconstitutional)[5]; see also, United States v. Hoover, 635 F.Supp.3d 1305 (M.D. Fla. Oct. 18, 2022); United States v. Fencl, 2022 WL 17486363 (S.D. Cal. Dec. 7, 2022). Bruen also recognized that background checks did not offend the U.S. Constitution, which constitutes a restriction or burden of sorts governing firearm possession, and also demonstrates that the Supreme Court acknowledged that the Second Amendment was not unlimited.[6]

　　While Bruen changed the legal landscape as to assessing the constitutional validity of firearm regulations, it did not wholesale find restrictions or criminalization of firearm possession unconstitutional.[7] While the undersigned appreciates the Defendant's concerns surrounding the

---

[5] It is noted this case is pending appeal before the 11th Circuit Court of Appeals.

[6] Moreover, the Supreme Court expressly noted that states maintain the right under the U.S. Constitution to require gun licenses for lawful possession. Id. at 597 U.S. at 38, 142 S.Ct. at 2138, fn 9.

[7] During the hearing, counsel for the Defendant advised the Court that those decisions concerning the constitutionality dispensed with the Bruen mandate to analyze the historical tradition behind Title 26 statutes, by simply finding because the Government met its burden at step one, the other statutes were constitutional. Counsel conceded, however, there were no other courts or case law he could identify that supported a finding that the pertinent statutes here under Title

additional charging statutes under Title 26 as being burdensome to his protected conduct under the Second Amendment, the undersigned observes the Defendant, in this District, does not have the benefit of protected conduct of possessing a firearm, be it a short-barreled shotgun or even a handgun, because he remains a convicted felon. In short, the Defendant could not legally register his modified shotgun regardless.

For the reasons set forth above, the Court **DENIES** the ***Defendant's <u>Bruen</u>-Based Motion to Dismiss*** (ECF No. 52).

Because of the imminency of trial, and in the event that the parties intend to object to the undersigned's ruling on this particular issue, the undersigned finds that an expedited timeframe for filing objections is necessary pursuant to Rule 59(b) of the Federal Rules of Criminal Procedure governing rulings on dispositive motions.[8] Accordingly, this ruling may be contested by filing objections with District Judge Frank W. Volk no later than **Monday, May 20, 2024.**  Any response to any objections will be due no **later three (3) business days** following the filling of any objections and any replies must be filed **within two (2) business days** thereafter. If objections are filed, the District Court will consider the objections and modify or set aside any portion of the Order found clearly erroneous or contrary to law.

The Clerk is directed to send a copy of this Order to the Defendant, Counsel for Defendant, and to the Assistant United States Attorney.

ENTER: May 14, 2024.



Omar J. Aboulhosn
United States Magistrate Judge

---

26 were unconstitutional since <u>Bruen</u>. To be fair, neither has the undersigned.

[8] Objections to rulings on dispositive motions typically are to be filed within 14 days. As the modified schedule provides, all pleadings regarding objections will be fully briefed no later than the end of business on May 28, 2024.

13